IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSE ALBERTO DE LA CRUZ MACIAS and JOSE ALBERTO DE LA CRUZ HINOJOSA, On Behalf of Themselves and All Others Similarly Situated, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 1:21-cv-656 |
| SEFBO PIPELINE BRIDGE, INCORPORATED, | § § § § | FLSA COLLECTIVE ACTION |
| Defendant. | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Jose Alberto De La Cruz Macias ("Macias") and Jose Alberto De La Cruz Hinojosa ("Hinojosa") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Complaint against SEFBO Pipeline Bridge, Incorporated ("Defendant"), showing in support as follows:

### I.     NATURE OF THE CASE

1.     This is a civil action brought by Plaintiffs pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") for Defendant's failure to pay Plaintiffs and the putative collective action members time and one-half their respective regular rates of pay for all hours worked over 40 during each and every relevant seven-day workweek.

2.     Plaintiffs were employed by Defendant as manual labor workers in Defendant's roadway, guardrail, and/or bridge construction/repair business in Texas. Plaintiffs' work for Defendant primarily consisted of traffic control before, during, and after a given project, demolition of the roadway and/or roadway related items being repaired or replaced, and cement

work to repair and/or replace roadway and/or roadway related items (hereafter "Roadway Construction Workers").

3. Although Defendant labeled Plaintiffs as 1099 workers/independent contractors, Plaintiffs were actually employees pursuant to the FLSA.

4. Relative to their work for Defendant, Plaintiffs were paid on a day rate basis, regularly worked in excess of 40 hours per seven-day workweek, but were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each and every workweek.

5. Defendant employed and continues to employ numerous other manual labor and day rate paid Roadway Construction Workers in connection with its roadway, guardrail, and/or bridge construction and/or repair work who, like Plaintiffs, regularly work and/or worked in excess of 40 hours per seven-day workweek but are not and/or were not paid time and one-half their respective regular rates of pay for all hours worked over 40 for each and every workweek.

6. Plaintiffs, on behalf of themselves and the putative collective action members, seek all unpaid overtime wage related damages available under the FLSA including back overtime wages, liquidated damages, legal fees, costs, and post-judgment interest.

## II.   THE PARTIES, JURISDICTION, AND VENUE

**A.   Plaintiff Jose Alberto De La Cruz Macias**

7. Macias is a natural person who resides in El Paso County, Texas. He has standing to file this lawsuit.

**B.   Plaintiff Jose Alberto De La Cruz Hinojosa**

8. Hernandez is a natural person who currently resides in El Paso County, Texas. He has standing to file this lawsuit.

**C.   Putative FLSA Collective Action Members**

9. The putative FLSA collective action members are all Roadway Construction Workers of Defendant who are and/or were paid on a day rate basis, and like Plaintiffs, are not and/or were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each seven-day workweek. Like Plaintiffs, those Roadway Construction Workers are and/or were labeled as independent contractors by Defendant but were employees of Defendant under the FLSA.

10. Because Defendant did not and does not pay all overtime premium compensation to those putative collective action members who routinely work(ed) in excess of 40 hours per workweek, Plaintiffs and the putative collective action members are all similarly situated within the meaning of Section 216(b) of the FLSA.

11. The relevant time period for the claims of the putative collective action members is three years preceding the date this lawsuit was filed and forward, or such other time period as deemed appropriate by the Court.

12. Plaintiffs reserve the right to redefine the collective action, request more than one collective action class, and/or request collective action sub-classes.

**D.    Defendant SEFBO Pipeline Bridge, Incorporated**

13. Defendant is a domestic for-profit corporation.

14. During all times relevant, Defendant has done business in the State of Texas.

15. Defendant is registered with the Texas Secretary of State to conduct business operations in Texas.

16. At all times relevant to this lawsuit, Defendant is and has been an "enterprise engaged in commerce" as defined by the FLSA.

17. At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

18. At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked on goods and/or materials that have been moved in and/or produced for commerce by any person.

19. For example, Defendant employed two or more employees who regularly handled, sold, and/or otherwise worked on goods and/or materials in their daily work that are/were moved in and/or produced for commerce. Examples of such goods and/or materials include tools, phones, vehicles, fuel, traffic control markings (such cones, signs, and flags), roadway construction or repair material, guardrail construction or repair material, and personal protection equipment.

20. On information and belief, at all times relevant to this lawsuit, Defendant has had annual gross sales or business volume in excess of $500,000.

21. Defendant's principal place of business is 5306 Middle Fiskville Road, Austin Texas 78751.

22. Defendant may be served with summons through its registered agent, Chi-Kao Hsu, 7221 Northeast Drive, Austin, Texas 78723.

E. **Jurisdiction and Venue**

23. Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

24. The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

25. During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

26. The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims on federal law, namely the FLSA.

27. Venue is proper in this Court because Defendant's principal place of business is located in the Austin Division of the United States District Court for the Western District of Texas.

### III.   FACTUAL BACKGROUND

28. Defendant performs bridge, pipeline, and concrete construction and/or repair work. Some of that work includes construction and/or repair relative to bridges, guardrails, and/or roadways pursuant to contracts with governmental entities (hereafter the "Roadway Construction Work").

29. Macias worked exclusively for Defendant from approximately March 25, 2021 to approximately June 25, 2021.

30. Hernandez worked exclusively for Defendant from approximately March 25, 2021 to approximately June 25, 2021.

31. Macias and Hernandez would have continued exclusive work for Defendant had they not been seriously injured performing Roadway Construction work on Interstate 20 in East Texas.

32. Plaintiffs were paid on a day rate basis by Defendant.

33. Plaintiffs performed manual labor related Roadway Construction Work for Defendant. Plaintiffs' work primarily consisted of traffic control before, during, and after a given project, demolition of the roadway and/or roadway related items being replaced, and cement work to repair and/or replace roadway and/or roadway related items. Plaintiffs performed their work for Defendant as a part of a crew of Roadway Construction Workers.

34. Plaintiffs were labeled as independent contractors and/or 1099 workers, but were employees of Defendant pursuant to the FLSA's economic realities test.

35. In connection with its Roadway Construction Work, Defendant engaged and continues to engage numerous other Roadway Construction Workers similarly situated to Plaintiffs to perform that work. Those Roadway Construction workers perform and/or performed manual labor job duties that are and/or were substantially similar to Plaintiffs. Those Roadway Construction Workers are and/or were labeled as independent contractors by Defendant, are and/or were paid on a day rate basis, and are and/or were issued 1099s instead of W-2s relative to their work for Defendant. However, those Roadway Construction Workers are and/or were employees of Defendant under the FLSA's economic realities test.

36. Defendant exercised control over when and how Plaintiffs and the putative collective action members performed their work for Defendant. Defendant assigned Plaintiffs and the putative collective action members the work they were to perform in a given workday and/or workweek.

37. Defendant's investments in its business operations vastly exceeded the investment, if any, by each of the Plaintiffs and putative collective action members in Defendant's business operations. Defendant provided all tools and materials used in connection with Roadway Construction Work Plaintiffs and the putative collective action members performed for Defendant. Plaintiffs and the putative collective action members did not advertise for or solicit customers, but instead performed the Roadway Construction Work assigned them by Defendant. That Roadway Construction Work was obtained by Defendant through contracts with governmental entities. Plaintiffs and the other Roadway Construction Workers are and/or were the labor Defendant used to perform its obligations pursuant to those contracts.

38.     Defendant controlled all opportunity for profit and loss relative to the Roadway Construction Work performed by Plaintiffs and the putative collective action members. Plaintiffs and the putative collective action members were paid pursuant to methods of pay and rates of pay set by Defendant. Plaintiffs and the putative collective action members did not have any opportunity for "profit" or "loss" as independent economic entities. Instead, they only had the opportunity to earn more wages by performing more days of work as is typical in an employer-employee relationship.

39.     The Roadway Construction Work Plaintiffs and the putative collective action members performed for Defendant did not require or involve a unique skill set or require specialized education.

40.     Plaintiffs and the putative collective action members routinely worked more than 40 hours per seven-day workweek for Defendant. However, Defendant did not pay Plaintiffs and the putative collective action members time and one-half their respective regular rates of pay when they worked more than 40 hours in any seven-day workweek.

41.     Plaintiffs and the putative collective action members were employees under the FLSA when they worked for Defendant relative to the claims made the subject matter of this lawsuit. Defendant's failure to pay Plaintiffs and the putative collective action members time and one-half their respective regular rates of pay for each and every hour worked over 40 in all applicable seven-day workweeks is a violation of the FLSA.

### IV.     CONTROLLING LEGAL RULES

42.     The FLSA states that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess

of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

43.     The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at … not less than … $7.25 an hour." 29 U.S.C. § 206(a)(1)(C).

44.     "The FLSA defines an employee as any individual employed by an employer." *Lovo v. Express Courier Intl., Inc.*, 4:16-CV-853-Y, 2019 WL 387367, at *2 (N.D. Tex. Jan. 30, 2019) (citing 29 U.S.C. § 203(e)(1) (brackets and quotations omitted)). "Employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* (citing 29 U.S.C. § 203(d)). "[E]mploy means to suffer or permit to work." *Id.* (citing 29 U.S.C. § 203(g) (quotations omitted)). Accordingly, "the definition of employee under the FLSA is particularly broad." *Id.* (citing *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (brackets omitted)).

45.     Whether an individual is an employee, who is covered by the FLSA's provisions, as opposed to an independent contractor, who is not covered by the FLSA, is determined by the economic realities test. *Hopkins*, 545 F.3d at 343. The purpose of the economic realities test is to determine whether "the worker is economically dependent upon the alleged employer or is instead in business for himself." *Id.*

46.     District Courts within the Fifth Circuit consider the following five factors in assessing the economic reality of the working relationship: (1) the degree of control exercised by the alleged employer, (2) the extent of the relative investments of the worker and the alleged employer, (3) the degree to which the worker's opportunity for profit or loss is determined by the

alleged employer, (4) the skill and initiative required in performing the job, and (5) the permanency of the relationship. *Id.* at 343 (*citing Herman v. Express Sixty-Minutes Delivery Serv., Inc.,* 161 F.3d 299, 303 (5th Cir. 1998). The Fifth Circuit further noted that: "[n]o single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind." *Id*. (*citing Herman*, 161 F.3d at 303 and *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1043-44 (5th Cir. 1987)).

47. Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

48. Under the FLSA's Continuous Workday Rule, "[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked." 29 C.F.R. § 790.6.

49. "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough.

Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

50. An employee is employed for purposes of the FLSA if the employer has "knowledge, actual or constructive, that [s]he was working." *Mack v. Avara Cmty. Health Servs.*, No. 3:13-CV-1976-P, 2016 U.S. Dist. LEXIS 129266, at *3-4 (N.D. Tex. Feb. 5, 2016) (Solis, J.) (*citing Newton,* 47 F.3d at 748). "Constructive knowledge exists if by exercising reasonable diligence an employer would become aware that an employee is working overtime." *Von Friewalde v. Boeing Aero. Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009) (quotations and citation omitted).

51. The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

52. With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

53. "Any employer who violates the provisions of [29 U.S.C. § 206] or [29 U.S.C. § 207] … shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. … The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

### V.   PLAINTIFFS' CLAIMS

54. Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

55. At all times relevant, Defendant is and/or has been an eligible and covered employer under the FLSA. 29 U.S.C. § 203(d).

56. At all times relevant, Defendant is and/or has been an enterprise engaged in commerce under the FLSA. 29 U.S.C. § 203(s)(1)(A).

57. Plaintiffs were employees of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e).

58. The putative collective action members are and/or were employees of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e).

59. When Plaintiffs and the putative collective action members worked for Defendant relative to Roadway Construction Work, they were each economically dependent on Defendant as opposed to being in business for themselves. As such, they were employees of Defendant pursuant to the FLSA's economic realities test. *Hopkins*, 545 F.3d at 343.

60. Plaintiffs and the putative collective action members are and/or were covered employees under 29 U.S.C. § 206(a) and 29 U.S.C. § 207(a)(1).

61. Plaintiffs and the putative collective action members each routinely work and/or worked in excess of 40 hours per seven-day workweek as employees of Defendant. However, Defendant does not and/or did not pay Plaintiffs and the putative collective action members time and one-half their respective regular rates of pay for any hours worked over 40 in each and every seven-day workweek when Plaintiffs and the putative collective action members worked for Defendant.

62. The failure of Defendant to pay Plaintiffs and the putative collective action members time and one-half their respective regular rates of pay for each and every hour worked over 40 in a seven-day workweek is a violation of the FLSA.

63. Defendant's violations of the FLSA are and/or were willful within the meaning of 29 U.S.C. § 255(a). Defendant was aware that Plaintiffs and the putative collective action members regularly worked more than 40 hours per seven-day workweek without being paid any overtime premium pay for those overtime hours worked. Furthermore, Defendant intentionally labeled Plaintiffs and the putative collective action members as 1099 workers/independent contractors. For federally funded projects, such as the Interstate 20 Roadway Construction Work Plaintiffs and some of the putative collective action members were working for Defendant, Defendant is required to comply with the FLSA and provisions of the Davis-Bacon Act which, amongst other things, requires submission of weekly certified payroll reports to the Wage and Hour Division of the United States Department of Labor by Defendant. Such certified payroll reports include the worker's name and identifying number, work classification, hours worked each day of the workweek, total hours worked each workweek, rates of pay, gross amount earned, deductions (such as FICA withholdings), and net wages paid. If Defendant complied with the Davis-Bacon Act, then it has records showing the name of each Roadway Construction Worker, the daily and weekly hours they each worked, and whether or not they were paid and and/or all overtime premium pay for weekly hours worked over 40.

64. Plaintiffs, on behalf of themselves and all others similarly situated, seek all damages available for Defendant's failure to timely pay all overtime wages owed.

## VI.  FLSA COLLECTIVE ACTION

65. Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See, e.g., Hamilton v. Enersafe, Inc.*, SA-15-CA-00965-DAE, 2017 WL 10729152, at *9 (W.D. Tex. Aug. 17, 2017) (conditionally certifying company-wide collective action in FLSA overtime

wage case involving numerous companies that labeled workers as independent contractors); *Sterling v. Greater Houston Transportation Co.*, CV H-20-910, 2021 WL 2954663, at *3 (S.D. Tex. July 14, 2021) (Post *Swales*[1] case certifying FLSA overtime wage collective action for workers labeled as independent contractors on a company-wide basis).

66. Plaintiffs seek to represent a collective action under 29 U.S.C. § 216(b) on behalf of themselves and all current and/or former Roadway Construction Workers of Defendant who are and/or were paid on a day rate basis, and like Plaintiffs, are not and/or were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each seven-day workweek. Like Plaintiffs, those Roadway Construction Workers are and/or were labeled as independent contractors by Defendant but were employees of Defendant under the FLSA.

67. Because Defendant did not and does not pay all overtime premium compensation owed to those putative collective action members who routinely work(ed) in excess of 40 hours per workweek, Plaintiffs and the putative collective action members are all similarly situated within the meaning of Section 216(b) of the FLSA.

68. The relevant time period for this collective action is three years preceding the date this lawsuit was filed and forward, or such other time period deemed appropriate by the Court.

69. Plaintiffs reserve the right to establish sub-classes and/or modify collective action definition in any collective action certification motion or other filing.

### VII.   DAMAGES AND PRAYER

70. Plaintiffs ask that the Court issue a summons for Defendant to appear and answer, and that Plaintiffs be awarded a judgment against Defendant and/or order(s) from the Court for the following:

---

[1] *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. 2021).

a. Certification of this case as a FLSA collective action and notice to the putative collective action members,

b. All damages allowed by the FLSA, including unpaid overtime wages,

c. Liquidated damages in an amount equal to FLSA unpaid overtime wages,

d. Legal fees,

e. Costs,

f. Post-judgment interest,

g. All other relief to which Plaintiffs and the putative collective action members/collective action members are justly entitled.

Date: July 26, 2021.

Respectfully submitted,

By: s/ Allen R. Vaught
Allen R. Vaught
Attorney-In-Charge
TX Bar No. 24004966
Vaught Firm, LLC
1910 Pacific Ave., Suite 9150
Dallas, Texas 75201
(972) 707-7816 – Telephone
(972) 591-4564 – Facsimile
avaught@txlaborlaw.com

ATTORNEY FOR PLAINTIFFS